IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DONNA LYNN DONAT | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | NO. 17-5096 |
| NANCY A. BERRYHILL | : | |

KEARNEY, J.                                                                                                    June 28, 2018

## MEMORANDUM

Donna Lynn Donat asks we review the Social Security Commissioner's denial of her application for Supplemental Security Income ("SSI") benefits based on her claim of disability arising from heart problems, complications from a heart attack, problems with her right arm, problems with her right leg, pinched nerve in her neck, stenosis of her spine, narrow spinal canal, osteoarthritis, and asthma. Administrative Law Judge Jennifer Spector ("ALJ Spector") evaluated and weighed the evidence and denied Ms. Donat's disability claim.

After the Appeals Council also denied her appeal, Ms. Donat properly sought our review of ALJ Spector's decision and now raises good faith arguments for reversing the decision and awarding her benefits. Ms. Donat challenges ALJ Spector's ability to decide her residual function capacity ("RFC") because no medical source opines on her functional capacity to support the RFC determination. She also challenges ALJ Spector's reliance on a Vocational Expert Caroline Rutherford ("VE Rutherford"), who determined Ms. Donat could find work in the national economy without considering the use of a cane Ms. Donat alleges she needs. After careful review of the record and mindful of our limited scope of review, we find substantial

evidence does not support ALJ Spector's determination of Ms. Donat's RFC. We grant Ms. Donat's petition for review and remand for further evaluation in the accompanying Order.

**I.     Procedural background**

Ms. Donat, a former nursery school teacher, alleged she suffered from heart issues and poor mobility from her osteoarthritis and pain in her right leg, right arm, neck, back, and obesity which combined caused a lack of stamina preventing her from working. Ms. Donat filed for Social Security Disability Insurance and Supplemental Security Income benefits on July 14, 2014, claiming a disability onset date of April 1, 2009.[1] She later amended the onset date to August 18, 2013.[2] On September 25, 2014, the Social Security Administration denied Ms. Donat's claim.[3] On February 8, 2016, after requesting a hearing, Ms. Donat appeared before ALJ Spector.[4] On May 12, 2016, ALJ Spector denied Ms. Donat benefits.[5] The Appeals Council denied Ms. Donat's request for review of ALJ Spector's decision on September 8, 2017.[6] On November 14, 2017, Ms. Donat timely appealed the decision in this court under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II.    Analysis**

Ms. Donat seeks review arguing (1) ALJ Spector's determination of her RFC is not supported by substantial evidence because there is no medical assessment of Ms. Donat's "functional or vocational capacity"; and, (2) ALJ Spector's finding there are jobs Ms. Donat can perform is not supported by substantial evidence because ALJ Spector's hypothetical questions to the vocational expert did not properly include Ms. Donat's need for a cane as a limiting factor.[7]

An ALJ must determine whether the claimant is disabled when examining a challenge to the Commissioner's initial decision denying benefits. Under Title II of the Social Security Act

2

("Act"), a person who has contributed to the program who suffers from a physical or mental disability is afforded insurance benefits.[8] Under Title XVI of the Act, a disabled person may also be entitled to supplemental security income.[9] A disability is the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[10] A claimant is only disabled if their impairments are severe to the point it makes their previous work impossible to do or precludes any other kind of gainful work available in the national economy.[11]

To determine Ms. Donat's disability, the ALJ applies a five step analysis evaluation process consistent with the Commissioner's regulations.[12] If the Commissioner finds disability or non-disability at any step during the analysis, the Commissioner will end the analysis.[13] First the Commissioner considers a claimant's work activity, if any, and whether the plaintiff is performing substantial gainful activity.[14] Second, the Commissioner considers whether the claimant has a severe impairment.[15] Third, the Commissioner considers the medical severity of the impairment, whether the claimant has an impairment matching a medically listed impairment.[16] If the claimant's impairments or its equivalent matches a listed impairment, the claimant is presumed disabled.[17] If the claimant's impairments do not match impairments on the list, the Commissioner proceeds to step four, where the Commissioner determines the claimant's RFC.[18] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[19] In step five, if the claimant is unable to return to past work, the Commissioner must prove "there are other jobs existing in significant numbers in the national economy which claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC]."[20]

3

At step one, ALJ Spector found Ms. Donat met the insured status and had not engaged in substantial gainful activity since April 1, 2009. At step two, ALJ Spector found Ms. Donat suffered from severe impairments: (1) obesity; (2) fracture of the right knee, tibia, and fibula; (3) pulmonary embolism and coronary artery disease status post-acute myocardial infraction and stent with anticoagulant therapy; (4) degenerative disc disease of the cervical spine and lumbar spine with radiculopathy; and, (5) osteoarthritis of bilateral knees, status post left knee arthroscopy repair and right knee ACL/LCL rupture."[21] At step three, ALJ Spector found Ms. Donat's severe impairments, individually or combined, did not meet or medically equal an impairment listed in the Code of Federal Regulations.[22]

At step four, ALJ Spector found Ms. Donat could not return to her past work but has a residual functioning capacity ("RFC") "to perform light work … except the claimant can occasionally operate foot controls; can never climb ladders, ropes, or scaffolds; can only occasionally stoop; can never kneel; can occasionally crouch; can never crawl; can tolerate only occasional exposure to extreme cold, humidity, vibration and pulmonary irritants, such as dust, odors, or fumes; can have no exposure to hazards such [as] unprotected heights or dangerous machinery; and can stand and/or walk for a total of four hours per day."[23] At step five, ALJ Spector found Ms. Donat unable to perform her past relevant work but found based on Ms. Donat's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy" Ms. Donat can perform.[24]

Our review of ALJ Spector's decision is deferential and her findings of fact are conclusive if supported by substantial evidence.[25] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[26] Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the

evidence."[27] To determine whether substantial evidence supports a factual finding, we review the record as a whole.[28] We are bound by the ALJ's factual findings if they are supported by substantial evidence, even if we would have decided the matter differently.[29]

### A.   ALJ Spector's RFC determination is not supported by substantial evidence.

Ms. Donat argues ALJ Spector's determination of her RFC is not supported by substantial evidence because there is no medical assessment of Ms. Donat's "functional or vocational capacity."

#### 1.   ALJ Spector's RFC determination.

No medical personnel assessed and opined as to Ms. Donat's functional or vocational capacity; instead, ALJ Spector determined Ms. Donat's RFC based on Ms. Donat's own testimony and her medical records from 2009 through 2016. ALJ Spector first reviewed if there are impairments "which could be reasonably expected to produce [Ms. Donat's] pain or other symptoms."[30] Second, after determining the impairments, ALJ Spector evaluated "the intensity, persistence, or functionality limiting effects of [Ms. Donat's] symptoms to determine the extent to which they limit [Ms. Donat's] functioning."[31]

Ms. Donat alleged she suffered from heart issues and poor mobility from her osteoarthritis and pain in her right leg, right arm, neck, and back which combined caused a lack of stamina preventing her from working.[32] ALJ Spector reviewed Ms. Donat's testimony about her typical weekly activities and found her "extensive activities [] are inconsistent with her allegation of lack of stamina."[33] ALJ Spector also found Ms. Donat testified she could work for four and half hours a day and "admitted [] she could walk for four hours or do a combination of activities for that duration."[34]

5

ALJ Spector then reviewed Ms. Donat's medical records and found they failed to "provide strong support" for Ms. Donat's allegations and did "not support the existence of limitations greater than those reflected [in the RFC] and indicate [Ms. Donat] is still capable of a reduced range of light work."[35] ALJ Spector first reviewed Ms. Donat's heart issues. Ms. Donat's medical records show a history of coronary artery disease. In August 2009, Ms. Donat had a heart attack.[36] In November 2012, Dr. Niku Thomas, a cardiologist, opined Ms. Donat "has no signs or symptoms of progression of her coronary artery disease at this time."[37] In August 2013, Ms. Donat received treatment for her heart condition but by January 2014 and October 2015, Dr. Thomas opined Ms. Donat had no signs or symptoms of progression of her coronary artery disease.[38] At the hearing, Ms. Donat testified her heart condition does not cause her lack of stamina and her difficulties standing and walking.[39]

ALJ Spector then reviewed medical records of Ms. Donat's spine, knee, and leg impairments and her obesity and found they also did not support her allegations. ALJ Spector determined Ms. Donat's spine allegations "were inconsistent with her treatment history, which showed significant improvement with treatment."[40] ALJ Spector noted Ms. Donat reported neck pain in February 2014, but the medical record includes no mention of neck problems after June 2014.[41] As for her spine, ALJ Spector found June 2014 images of Ms. Donat's spine "showed multilevel degenerative changes with spinal canal and foraminal stenosis, most pronounced at C4-C5 and C5-C6 levels" and 2015 images of Ms. Donat's lumbar spine "showed mild multilevel spondylotic changes contributing to neural foraminal narrowing canal stenosis, but without significant canal stenosis or nerve root compression."[42] ALJ Spector found Ms. Donat's allegations of pain inconsistent with her admission medications helped alleviate her symptoms and epidural injections provided her "100% relief."[43]

6

ALJ Spector then reviewed Ms. Donat's leg and knee allegations and found the "objective medical evidence" did not support or is inconsistent with her allegations.[44] Ms. Donat alleged right knee and leg impairment, avulsion fractures and a complete tear of her right ACL, from being hit by vehicle in August 2013.[45] ALJ Spector found Ms. Donat's "right leg and knee demonstrated improvement with conservative treatment" and in December 2013, her treating doctor discharged her from rehabilitative services.[46] ALJ Spector noted by January 2014, Ms. Donat reported feeling well and walking 8 blocks continuously and a February 2014 image showed her unchanged avulsion fractures from the August 2013 accident and osteoarthritis.[47] ALJ Spector found December 2013 images of Ms. Donat's left knee did not support her allegation because her knee had no "acute abnormality and moderate osteoarthritis with predominant articular space loss in the medial compartment."[48]

ALJ Spector also evaluated Ms. Donat's obesity diagnosis but found her body mass index "does not correlate with any specific degree of functional loss" but considered the effect of obesity on Ms. Donat's functional capacity.[49]

In concluding the RFC determination, ALJ Spector highlighted specific factors justifying her determination because there is a lack of medical evidence of severe impairments and treatments are generally successful in controlling Ms. Donat's symptoms. ALJ Spector further somewhat inconsistently found Ms. Donat had a long history of knee and back impairments before the "adjudicated period" but had worked successfully but also found Ms. Donat "did not consistently engage in work at the substantial gainful activity level prior to the alleged onset date, which raises a question as to whether [Ms. Donat's] continuing unemployment is actually due to medical impairments."[50] Finally, ALJ Spector noted Ms. Donat still has a "fairly active lifestyle" while suffering from the impairments.[51] ALJ Spector concluded "the record does not

7

contain any opinions from treating or examining physicians indicating [Ms. Donat] is disabled or has limitations greater than" the RFC assigned by ALJ Spector.

### 2. Analysis of the RFC determination.

Ms. Donat objects to ALJ Spector's determination of her RFC as not supported by substantial evidence because there is no medical assessment of Ms. Donat's "functional or vocational capacity." Ms. Donat argues while the lack of medical assessment of her RFC is not a "*per se* error," its lacking "denotes a lack of substantial evidence supporting the RFC."[52]

To determine an RFC, the ALJ "must consider all relevant evidence, including medical opinions, statements from medical sources, and the claimant's statements about [her] impairments."[53] The ALJ must consider all claimed impairments "both severe and non-severe."[54] "[R]arely can a decision be made regarding the claimant's [RFC] without an assessment from a physician regarding functional abilities of the claimant."[55] "Although an ALJ is entitled to resolve conflicts in the evidence and determines the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity."[56]

In *Phillips*, a claimant alleged impairments of a major depressive disorder and other mental illness.[57] The ALJ found the claimant's major depression disorder is a "non-severe impairment and that the evidence of record does not substantiate more than minimal work-related limitations from the condition."[58] The ALJ based this determination solely on comparing the claimant's subjective complaints to treatment records from her doctor.[59] Judge Quiñones Alejandro remanded because "the ALJ's assessment of [the claimant's] RFC is not supported by a residual functional capacity assessment done by either a treating or examining physician."[60] Judge Quiñones Alejandro found while the claimant's medical records had substantial evidence

8

of her major depression disorder, "no one, not even [the claimant's] treating physicians, completed a functional assessment of her mental health limitations."[61] Judge Quiñones Alejandro refused to "speculate" how the claimant's subjective symptoms could affect her RFC "without the benefit of a medical opinion and RFC assessment of [claimant's] mental impairments, singularly or in combination with her physical impairments"[62]

No one assessed Ms. Donat's functional capacity and no treating doctor opined on the effect of her impairments on her functional abilities. ALJ Spector instead determined Ms. Donat's RFC only by comparing her subjective complaints to raw medical data from her treating doctors as in *Phillips* where the ALJ used subjective complaints and treatments notes to arrive at an RFC. No doctor opined on the effects of Ms. Donat's osteoarthritis, previous knee fractures and ALC tear, or her spinal impairments on her ability to perform light work, ability to walk and/or stand for four hours a day, or her need of a cane to assist in walking. Similar to Judge Quiñones Alejandro, we are left to "speculate" how Ms. Donat's physical impairments affect her RFC assessment.[63] We cannot do so. We lack a record. Because we cannot speculate at this stage, we find ALJ Spector's determination of Ms. Donat's RFC is not supported by substantial evidence. We must remand to further develop how Ms. Donat's impairments affect her RFC assessment.

### B. We do not address Ms. Donat's objection to the hypothetical question.

Ms. Donat also objects to ALJ Spector's finding there are jobs Ms. Donat can perform. ALJ Spector's hypothetical questions to the vocational expert did not properly include Ms. Donat's need for a cane as a limiting factor.[64] Because we remand, we do not address this objection because we found ALJ Spector's RFC determination used in the hypothetical question is not supported by substantial evidence.

9

## III. Conclusion

In the accompanying Order, we grant Ms. Donat's Petition for Review and remand for a new RFC determination for Ms. Donat using a medical assessment of a treating or examining physician on the effect of Ms. Donat's impairments, including her need for assistive walking devices, on her residual functional capacity.

---

[1] ECF Doc. No. 9, Social Security Administrative Record ("R.") at 35, 104-05.

[2] R. 35 (changing the onset date disqualified Ms. Donat from Social Security Disability Insurance benefits due to insurance purposes).

[3] R. 101-02.

[4] R. 30-85.

[5] R. 13-24.

[6] R. 1.

[7] ECF Doc. No. 11 at 1, 7.

[8] 42 U.S.C. § 423(a)(1)(D).

[9] *Id.* § 1381 *et seq.*

[10] *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A).

[11] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

[12] *See* 20 C.F.R. § 416.920(a)(4); *see e.g.*, *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).

[13] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[14] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of non-disability if claimant is engaged in substantial gainful activity).

[15] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (mandating finding of non-disability if claimant's impairments are not severe).

[16] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[17] *Id.*

[18] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[19] *See e.g.*, *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001).

[20] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also Plummer*, 186 F.3d at 428.

[21] R. 15.

[22] R. 16-17. ALJ Spector found Ms. Donat's impairments do not meet the definition of "major dysfunction of a joint," "disorders of the spine," or "fracture of the femur, tibia, pelvis, or one or more of the tarsal bones."

[23] R. 17.

[24] R. 23.

[25] *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

[26] *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[27] *Id.* (quoting *Rutherford*, 399 F.3d at 552) (internal quotations omitted).

[28] *Id.* (quoting *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)).

[29] *Trinh v. Astrue*, 900 F. Supp. 2d 515, 518 (E.D. Pa. 2012) (citing *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001)).

[30] R. 18.

[31] *Id.*

[32] R. 18-19.

[33] R. 19.

[34] *Id.*

[35] *Id.*

³⁶ *Id.*

³⁷ R. 19, 520.

³⁸ R. 21-22, 471, 751.

³⁹ R. 77-78.

⁴⁰ *Id.*

⁴¹ R. 20.

⁴² *Id.*

⁴³ R. 20, 587, 590-91.

⁴⁴ R. 21.

⁴⁵ R. 20.

⁴⁶ R. 21, 423.

⁴⁷ R. 21.

⁴⁸ *Id.*

⁴⁹ R. 22.

⁵⁰ *Id.*

⁵¹ *Id.*

⁵² ECF Doc. No. 15 at 2.

⁵³ *Phillips v. Berryhill*, No. 15-5204, 2017 WL 2224931, at *4 (E.D. Pa. May 22, 2017) (citing 20 C.F.R. § 416.945(a)(3); *Fargnoli*, 247 F.3d at 38).

⁵⁴ *Id.* (§§ 416.920(e), 416.945).

⁵⁵ *Id.* (quoting *Gormont v. Astrue*, No. 11-2145, 2013 WL 791455, *7 (M.D. Pa. Mar. 4, 2013) and citing *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)).

⁵⁶ *Id.* (citing *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978) and *Kertesz v. Crescent Hills Coal Co.*, 788 F.3d 158, 163 (3d Cir. 1986) (quoting *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d

Cir. 1985)) ("[A]n ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").

[57] *Id.* at 2.

[58] *Id.* at 5 (internal citations omitted).

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *See id.*

[64] ECF Doc. No. 11 at 1, 7.